UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

_____

In re:

STAMP FARMS, L.L.C., *et al*.,[1]

                Debtor.

_____/

Case No. DK 12-10410
Hon. Scott W. Dales

TODD FILE,

              Plaintiff,

v.

BOERSEN FARMS, INC. and
BOERSEN FARMS AG, LLC,

              Defendants.

_____/

Adversary Proceeding
No. 13-80184

OPINION AND ORDER REGARDING SUMMARY JUDGMENT MOTIONS

PRESENT:    HONORABLE SCOTT W. DALES
                     United States Bankruptcy Judge

INTRODUCTION

This adversary proceeding arises out of the chapter 11 bankruptcy proceedings of Stamp

Farms, LLC, Stamp Farms Trucking, LLC, Stamp Farms Custom AG, LLC, and Royal Star

Farms, LLC (collectively, "Stamp Farms" or the "Debtor"). The cases were filed on

November 30, 2012, jointly administered, and later converted to chapter 7 on May 23, 2013.

Before conversion, most of the Stamp Farms assets were sold in a bulk sale to Boersen Farms,

Inc., and assigned to Boersen Farms AG, LLC (collectively "Boersen Farms"). As part of the

_____

[1] The Debtors are: Stamp Farms, L.L.C. (Case No. 12-10410); Stamp Farms Trucking, L.L.C. (Case No, 12-10411); Stamp Farms Custom AG, L.L.C. (Case No. 12-10416); and Royal Star Farms, L.L.C. (Case No. 12-10417).

court-approved transaction, Boersen Farms succeeded to the Debtor's interest in various farm leases. At issue is whether Boersen Farms is liable to plaintiff Todd File ("Mr. File") with respect to a document entitled "Land Lease for Farming Purposes," covering a 70 acre parcel, a roughly 42 acre parcel, a grain bin, and a dryer (the "Todd File Lease").

Both parties have filed motions for summary judgment. Mr. File asks the court to determine, as a matter of law, that the Todd File Lease was included in the sale to Boersen Farms, and that he may recover damages for breach of the lease. Boersen Farms, in contrast, seeks dismissal on jurisdictional grounds, and (alternatively) argues that the companies never assumed the Todd File Lease.

For the reasons stated below, the court has determined that it has jurisdiction to interpret its Sale Order and related sale documents, but not to determine whether a specific lease has been breached, or the damages, if any, flowing from the breach. The court also concludes that Stamp Farms assumed the Todd File Lease, and that Boersen Farms became obligated to perform under the Todd File Lease pursuant to § 365 and the court's order approving the transaction.

## BACKGROUND

Prior to filing for bankruptcy, Stamp Farms raised crops generally on land leased from farmers and other landowners in Southwest Michigan, including Mr. File. Due to the timing of the bankruptcy petition in November 2012, the court and most interested parties agreed that it was imperative for Stamp Farms to sell its assets, and assign its farm leases, before the April 2013 planting season. Otherwise, the Debtor, creditors, and lessors would have lost the value of crops for the entire year. The urgency was obvious, especially to the landowners like Mr. File who depended on the Debtor's lease payments. This consensus prompted the court to expedite

the transaction so that stakeholders would be able to plant fields and otherwise employ the farming assets of the Debtor and its lessors in time for the 2013 growing season. Principally for this reason,[2] the Debtor set a goal of March 30, 2013 to consummate a bulk sale (the "Bulk Sale") of its assets -- including the leased farmland.

On January 22, 2013, Stamp Farms, as debtor-in-possession, provided notice of proposed cure amounts to all landowners that held unexpired leases the Debtor expected to assume and assign as part of the Bulk Sale. Hundreds of leases were included. *See* Plaintiff's Brief in Support of Motion for Summary Judgment ("Pl. Brief" (DN 28), Exh. 2 (DN 31)). Pursuant to the court's order, the Debtor conducted an auction on February 5, 2013 and Boersen Farms was the successful bidder. At closing on February 22, 2013, the Debtor executed an assignment of all of its rights in the leases to Boersen Farms identified on "Exhibit A" to the Amended and Restated Asset Purchase Agreement, dated as of February 7, 2013 (the "Purchase Agreement," Pl. Brief, Exh. 2). In order to give Boersen Farms some flexibility in determining which farm leases it intended to acquire through the transaction, the Purchase Agreement provided a mechanism in Section 2.3.2 pursuant to which Boersen Farms might, by acting quickly, avoid taking assignment of any lease:

> The parties agree to amend Exhibit "A" hereto to reflect the removal of any Real Property Lease which the Purchaser does not desire to assign from Sellers, and which Sellers do not desire to assume and assign to the Purchaser, from time to time after the Closing until March 30, 2013 . . . With respect to any Real Property Lease that is removed from Exhibit "A" hereto in accordance with the foregoing, (i) this Agreement shall not constitute an agreement to assign or otherwise transfer any rights or obligations under any such unassigned Real Property Lease to the Purchaser ("Unassigned Real Property Lease"), and (ii) the Purchase Price shall be deemed reduced, dollar for

---

[2] The 120 day period for assuming nonresidential real estate leases under § 365(d)(4)(A)(i) was also set to expire on March 30, 2013, creating additional urgency to preserve value.

> dollar, by the amount of the 2012 Cure Amount, if any, related to any such Unassigned Real Property Lease.

*See* Purchase Agreement at § 2.3.2 (Pl. Brief, Exh. 2).  As part of the purchase price, Boersen Farms agreed to remit the required cure payments in a timely manner.  There were no cure payments due to Mr. File.  Boersen Farms contends that the Todd File Lease was deemed rejected on March 30, 2013 because Boersen Farms never formally assumed it.  *See* Boersens' Brief in Opposition to Plaintiff's Motion for Summary Judgment (hereinafter "Def. Opp. Brief") at 7.

Exhibit A to the Purchase Agreement between Stamp Farms and Boersen Farms listed two leased parcels next to Mr. File's name -- one for 42 acres and one for 70 acres, both set to expire in 2016.  (Pl. Brief, Exh. 2, p. 24).  Boersen Farms received a copy of the lease document in early March, 2013, before the March 30, 2013 deadline prescribed in Section 2.3.2 of the Purchase Agreement.  (Pl. Brief, Exh. 4).  Having reviewed the original transcript and exhibits from Mr. Boersen's deposition (presented to the court at oral argument in a sealed envelope), the court regards the first two pages of Exh. 4 as the Todd File Lease.  *See* Transcript of Deposition of Dennis Boersen held December 13, 2013 at 15:2-17.  The court reaches this conclusion in part because (1) the Defendants' principal, Dennis Boersen, admitted that he received that document before the March 30, 2013 deadline for excluding farm leases from the scope of the Purchase Agreement; and (2) it conforms to Exhibit A to the Purchase Agreement by identifying the 42 and 70 acre parcels and the 2016 expiration date referred to therein.  The record contains no evidence that the parties ever amended Exhibit A to exclude the Todd File Lease.

After the Bulk Sale closed, Boersen Farms sent out a notice to the landlords of the leased farmland, including Mr. File, indicating that it had purchased the lease agreements and required all the documentation necessary to assume the contracts.  (Pl. Brief, Exh. 6, DN 28-6).  Boersen

Farms picked March 11, 2013 as the date to hold a meeting with all the landlords in order to execute the assumption documentation.  Mr. File, however, was unable to attend the meeting in March, but made arrangements with Mr. Boersen to meet in early April.

At that meeting in April 2013, Mr. Boersen inspected the acreage as well as a grain bin and dryer owned by Mr. File, and mentioned in the Todd File Lease.  Mr. File claims that after this meeting, Mr. Boersen, for the first time, notified him that Boersen Farms was not going to assume the lease for Mr. File's acreage.  He then sent Mr. File a document entitled "Release from Lease Agreement," which Mr. File refused to sign. (Pl. Brief, Exh. 7, DN 28-7).  Mr. Boersen claims that Mr. File said he would not allow Boersen Farms to lease his property unless it agreed to also lease the grain storage bin, dryer and certain pivots.  Mr. Boersen refused to do so.

Mr. File commenced the present adversary proceeding asking the court to determine whether Boersen Farms assumed the Todd File Lease as part of the Bulk Sale and whether the assumption included the grain storage bin, the dryer and the pivots.  If the court determines that Boersen Farms did assume the leases, then Mr. File asks the court to determine the damages he incurred for the breach of those leases.

Both parties filed summary judgment motions, but Boersen Farms argues, as a threshold matter, that the bankruptcy court lacks subject matter jurisdiction because this is a dispute between two non-debtor parties over a lease governed by state law, the outcome of which has no conceivable effect on the bankruptcy estate or the Debtor.  Mr. File, on the other hand, claims that the court retained jurisdiction to enforce its own orders, as it specifically did in the sale order.  *See* Order Approving Bulk Sale (DN 454, ¶ 11.23) and Amended Order Approving Bulk

Sale (DN 502, ¶ 49) (the "Sale Order").  In addition, he argues that Boersen Farms submitted to the court's jurisdiction by signing the Purchase Agreement and consummating the Bulk Sale.

The court turns first to the jurisdictional arguments.

### JURISDICTIONAL ANALYSIS

The jurisdiction of any federal court depends on Congressional enactments, and "a court cannot write its own jurisdictional ticket."  *Zerand-Bernal Group, Inc. v. Cox*, 23 F.3d 159, 164 (7th Cir. 1994).  For this reason, the court's inquiry begins not with the Sale Order, but instead with 28 U.S.C. § 1334.  That section provides in relevant part as follows:

> (a) Except as provided in subsection (b) of this section, the district courts shall have original and exclusive jurisdiction of all cases under title 11.
> (b) Except as provided in subsection (e)(2), and notwithstanding any Act of Congress that confers exclusive jurisdiction on a court or courts other than the district courts, the district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11.
> . . .

28 U.S.C. § 1334.  The Sixth Circuit has noted that this section technically creates jurisdiction over four types of proceedings (*i.e.*, the bankruptcy case itself, proceedings arising under title 11, those arising in a case under title 11, and those related to a case under title 11).  This adversary proceeding, obviously, is not a bankruptcy "case" as that term is used in 28 U.S.C. § 1334(a). *Michigan Employment Security Comm'n v. Wolverine Radio Co. (In re Wolverine Radio Co.)*, 930 F.2d 1132, 1141 n. 14 (6th Cir. 1991) (noting that "case" as used in 28 U.S.C. § 1334(a) refers only to the petition itself).  Stated differently, a "case" under the statute is commenced by filing a "petition" under §§ 301-304 or 1504, rather than a "complaint," as here.  And, the mere fact that the dispute requires the court to interpret its Sale Order does not mean that the dispute is

a "case" under title 11.  *Cf. In re Salem Mortgage Co.*, 783 F.2d 626, 633 n. 18 (6th Cir.1986)

(motion to enforce order confirming the plan cannot be properly characterized as a "case.").

Accordingly, this adversary proceeding is either a civil proceeding "arising under title 11" or

"arising in or related to cases under title 11," or a little of both.  Therefore, this dispute comes

within the court's jurisdiction, if at all, under 28 U.S.C. § 1334(b), governing matters over which

the court has concurrent rather than exclusive jurisdiction.

It is well-established that a bankruptcy court has jurisdiction to interpret and enforce its

own prior orders, particularly where, as here, it expressly retained jurisdiction to do so.

*Travelers Indem. Co. v. Bailey*, 557 U.S. 137 (2009); *In re Beta Int'l, Inc.,* 210 B.R. 279 (E.D.

Mich. 1996) (citing *In re Poplar Run Five Ltd. Partnership,* 192 B.R. 848, 859 (Bankr. E.D. Va.

1995)); *see also Lefkowitz v. Michigan Trucking, LLC (In re Gainey Corp.)*, 447 B.R. 807, 814

(Bankr. W.D. Mich. 2011) (court has jurisdiction to interpret confirmation and sale orders, and

asset purchase agreement referred to therein).  By signing an order that included a provision

retaining jurisdiction, the court did not purport to "write its own jurisdictional ticket," but only

endeavored to express its unwillingness to cede its jurisdiction over the subject matter that

Congress has conferred.

More specifically in the present case, the court included within its Sale Order the

following provision retaining jurisdiction in order to protect the sale process:

> This Court retains exclusive jurisdiction to interpret, construe,
> enforce and implement the terms and provisions of this Order, the
> Purchase Agreement, all amendments thereto, any waivers and
> consents hereunder, and of each of the agreements executed in
> connection therewith in all respects, including, but not limited to,
> retaining jurisdiction to (i) compel delivery of the Assets to the
> Purchaser, (ii) compel delivery of the Purchase Price or
> performance of other obligations owed to the Debtors pursuant to
> the Purchase Agreement, (iii) resolve any disputes arising under or
> related to the  Purchase Agreement, except as otherwise provided

therein, (iv) interpret, implement, and enforce the provisions of this Order, (v) protect the Purchaser against any Interests against or in the Debtors or the Assets, of any kind or nature whatsoever, attaching to the proceeds of the Sale, and (vi) determine all disputes among the Debtors, the Purchaser, and any non-Debtor parties to any Pre-Petition Contracts concerning, inter alia, the Debtors' assumption and/or assignment of any Pre-Petition Contract to the Purchaser under the Purchase Agreement.

Sale Order at ¶ 49. The lion's share of this provision anticipates contract enforcement disputes that might arise between the Debtor and the purchaser (Boersen Farms), and therefore has no bearing on this adversary proceeding. The last clause, however, mentions "all disputes among the Debtors, the Purchaser, and any non-Debtor parties to any Pre-Petition Contracts," such as Mr. File. To some extent, the current adversary proceeding involves just such a dispute.

Indeed, as became clear during oral argument on the parties' motions, the outcome of this dispute turns largely on the court's interpretation of the Sale Order in part because, without it, the Debtor had no authority to effectuate the transfers contemplated in the Purchase Agreement, including the assumption and assignment of farm leases such as Mr. File's lease of the 70 and roughly 42 acre parcels mentioned in Exhibit 4 to Plaintiff's moving brief.

Boersen Farms, for example, asks the court to construe the Sale Order and Purchase Agreement as, in effect, assigning to Boersen Farms the Debtor's right to assume leases under § 365, and conclude that Boersen Farms never elected to assume the Todd File Lease. Mr. File, in contrast, asks the court to construe the Sale Order as authorizing the Debtor to: (1) assume the leases identified on Exhibit A (albeit with the purchaser funding the cure payments); and (2) assign the assumed leases to Boersen Farms. Either way, the court's task depends initially on its interpretation of the Sale Order and the Purchase Agreement.

To this extent, the court clearly has subject matter jurisdiction because controversies involving the efficacy of assumption and assignment under § 365 could arise only in a

proceeding under title 11 and because, as noted above, the court has ample authority to interpret its Sale Order, and expressly preserved its power to do so. *See* Sale Order at ¶ 49(vi) (retaining jurisdiction to hear disputes concerning "the Debtors' assumption and/or assignment of any Pre-Petition Contract to the Purchaser under the Purchase Agreement"); *Bailey*, 557 U.S. at 151 (noting that the bankruptcy court retained jurisdiction to enforce its injunction and properly exercised that jurisdiction ten years after entry of order).  Moreover, because § 365 is closely-linked to the claims allowance process (at least for claims arising from executory contracts and unexpired leases),[3] the proceeding to this extent is a continuation of the "core" claims proceeding related to the Stamp Farms case, a proceeding in which the court's authority is at its "constitutional maximum." *Waldman v. Stone*, 698 F.3d 910, 919 (6th Cir. 2012) (citing *Stern v. Marshall*, 131 S. Ct. 2594, 2614 (2011)).  If the court were to conclude, as Boersen Farm argues, that the Todd File Lease was deemed rejected despite the Sale Order, Mr. File would likely assert a claim against the estate. Such a claim "may be filed within such time as the court may direct." Fed. R. Bankr. P. 3002(c)(4) (deadline for rejection damages claims).

Although the court has determined that it has authority to interpret the Sale Order and Purchase Agreement, its jurisdiction to decide what now amounts to a breach of contract action between non-debtor third parties is more problematic.  Bankruptcy courts, mindful of the limits on their authority, must carefully scrutinize their jurisdiction to resolve third-party disputes to ensure that the exercise of power does not exceed Congressional limits or encroach on state authority.  Nevertheless, as the Supreme Court has recognized, just because the dispute is between third parties does not doom subject matter jurisdiction in bankruptcy courts.  *Celotex*

---

[3] By assuming and assigning leases under § 365, the Debtor satisfied its obligation to deal with Mr. File's lease claim.  The Debtor might have elected to reject the Todd File Lease, in which case Mr. File would have become a "creditor" with a claim treated as if it had arisen prepetition.  11 U.S.C. § 101(10)(B) (defining "creditor"); *Id*. § 365(d)(4); *Id*. § 502(g).  In this way, § 365 plays an important part in the claims allowance process for a specific category of claims.

*Corp. v. Edwards*, 514 U.S. 300, 308 n.5 (1995).  Rather, bankruptcy courts may hear third party controversies if there is a close nexus to the bankruptcy case, typically phrased in terms of the court's "related to" jurisdiction.

Recently, the Sixth Circuit summarized the test for a bankruptcy court's "related to" jurisdiction:

> "'[T]he test for determining whether a civil proceeding is related to bankruptcy is whether the outcome of that proceeding could conceivably have any effect on the estate being administered in bankruptcy.'"  *Lindsey v. O'Brien, Tanski, Tanzer and Young Health Care Providers of Conn. (In re Dow Corning Corp.),* 86 F.3d 482, 489 (6th Cir.1996) (quoting *Pacor, Inc. v. Higgins*, 743 F.2d 984, 994 (3d Cir.1984)).  "An action is related to bankruptcy if the outcome could alter the debtor's rights, liabilities, options, or freedom of action (either positively or negatively) and which in any way impacts upon the handling and administration of the bankrupt estate."  *Id.* (quotation omitted).  "[T]he mere fact that there may be common issues of fact between a civil proceeding and a controversy involving the bankruptcy estate does not bring the matter within the scope of section [1334(b)]."  *Id.* (quotation omitted).  "Instead, there must be some nexus between the 'related' civil proceeding and the title 11 case."  *Id*. (quotation omitted).

*In re Greektown Holdings, LLC*, 728 F.3d 567, 577 (6th Cir. 2013).  The test requires the court to focus on the impact of the proceeding on the bankruptcy case, not simply common threads connecting the two.

Before oral argument, the court assumed that this adversary proceeding might be "related to" the Stamp Farms bankruptcy case in the jurisdictional sense because Mr. File timely filed a Proof of Claim (Claim No. 74) referring to the very same Zimmatic Pivots (Serial Nos. LA9011 and LA9012) mentioned in the last paragraph of the Todd File Lease.[4]  Until oral argument, the court also surmised that if Mr. File were to recover from Boersen Farms, his demand for

---

[4] The last paragraph of the Todd File Lease provides as follows:  "Lessor has agreed to pay $80,000.00 for the two Zimmatic Pivots with serial numbers LA9011 and LA9012.  Lessor purchased the piping and electrical between said pivots for $10,000.00.  Lessor has made a payment of $50,000.00 for said pivots with the remaining $30,000.00 to be subtracted from the 2011 fall grain bin and dryer rent payment."  (Pl. Brief, Exh. 4).

payment from the estate (represented by his Proof of Claim) might be reduced.  Hypothesizing in this way, the lease claim against Boersen Farms could "conceivably affect" the Stamp Farms case.

In response to the court's inquiry at oral argument, however, Mr. File's counsel indicated that the Proof of Claim and this adversary proceeding were not connected.[5]  Moreover, the proceedings in connection with the Bulk Sale established that there were no prepetition defaults under the Todd File Lease requiring a cure, further suggesting that the Proof of Claim is not related to any prepetition default under the Todd File Lease.  *See* Sale Order at Recital U (referring to Debtors' Notice of Final Cure Amounts (DN 451) which shows no cure payment related to the lease of Mr. File's acreage).  As the party asserting jurisdiction, Mr. File has the burden of proof on the issue,[6] and by disclaiming any reliance on the Proof of Claim as a jurisdictional hook at oral argument, his counsel brought this line of inquiry to an end.  The court is unable on the present record to conclude that the lease damage claim is "related to" the Stamp Farms case within the meaning of 28 U.S.C. § 1334(b).

To summarize, although the court has no qualms about deciding whether the Debtor assigned the Todd File Lease to Boersen Farms under § 365, the court will refrain from deciding the parties' respective rights under the lease.

---

[5] Indeed, it is possible to read the last paragraph of the Todd File Lease as obligating Todd File (the "Lessor") to reduce the grain and dryer bin rent due from Stamp Farms to account for the pivot-related payments that Mr. File agreed to make, although the language is not without ambiguity. (Pl. Brief, Exh. 4, p.2 (last paragraph)).

[6] *Rogers v. Stratton Indus., Inc.*, 798 F.2d 913, 915 (6th Cir.1986) (when challenged, plaintiff has burden to establish subject matter jurisdiction).

<u>MERITS ANALYSIS</u>

1.      <u>Summary Judgment Standards</u>

Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Bankr. P. 7056 (incorporating Fed. R. Civ. P. 56); *McCafferty v. McCafferty, (In re McCafferty),* 96 F.3d 192, 195 (6th Cir. 1996) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986)).   The evidence and all reasonable inferences must be construed in a light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,*475 U.S. 574, 587 (1986); *Redding v. St. Edward,* 241 F.3d 530, 532 (6th Cir. 2001).  Here, the parties have each filed their own motions, and the court will consider each separately under these standards.

2.      <u>Assignment of Todd File Lease to Boersen Farms</u>

Concluding that Stamp Farms assigned the Todd File Lease to Boersen Farms pursuant to the Purchase Agreement, the Assignment and Assumption Agreement, and the Sale Order, is a simple matter given the absence of any genuine issue of material fact.

It is no coincidence that Exhibit A to the Purchase Agreement and Exhibit 4 to the Plaintiff's brief both refer to separate parcels, one including approximately 42 acres and the other, 70 acres, for a total of approximately 112 acres.  Indeed, the record includes a document entitled "Release from Lease Agreement" that Mr. Boersen proposed, which included the following recitation corroborating the court's conclusion:

> This is a release/termination notice between Todd File (Owner) and Boersen Farms Ag, LLC (Operator).  On February 25, 2013, Boersen Farms Ag, LLC had the option of assuming the lease between Todd File and Stamp Farms, LLC, for approximately 112 acres of crop land, situated in Section 24 and 25 of Penn Township, in the County of Cass, in the State of Michigan, in addition the lease also included the rental of a Grain Bin located on the property and dryer rental.

(Pl. Brief, Exh. 7 (the "Release")).  The Release, dated May 1, 2013, amounts to an admission after March 30, 2013 that Boersen Farms succeeded to Stamp Farm's obligations under the Todd File Lease, including the rental of land, the grain bin, and the dryer.  Furthermore, based on Mr. Boersen's deposition testimony, there is no dispute that the principal decision-maker of Boersen Farms had a copy of the Todd File Lease several weeks before the March 30, 2013 deadline to exclude it from the Bulk Sale.  There is no evidence that Stamp Farms and Boersen amended Exhibit A to exclude the Todd File Lease before the March 30, 2013 deadline.  As a factual matter, the record points to one conclusion:  Stamp Farms assumed the Todd File Lease by including it among the Bulk Sale assets, and assigned it to Boersen Farms in accordance with § 365 and the Purchase Agreement, pursuant to the Sale Order.

Although Boersen Farms raises no genuine factual dispute, it does advance an argument based on its conception of the nature of the Purchase Agreement, suggesting that Stamp Farms assigned to Boersen Farms its statutory rights to assume or reject leases under § 365, and that Boersen Farms never took steps to formally assume the Todd File Lease.  As a result, according to Boersen Farms, the Todd File Lease was deemed rejected on March 30, 2013, under § 365(d)(4)(A)(i).  The court rejects that legal argument as utterly inconsistent with the Purchase Agreement, the Sale Order, and the Bankruptcy Code.

The Purchase Agreement and the Sale Order are replete with references to the *Debtor's* assumption of the various leases, and the *Debtor's* assignment of leases to the successful bidder, ultimately Boersen Farms.  *See* Sale Order at Recital T and ¶¶ 16-17.  The footprints of § 365 — statutory terms of art such as "cure," "adequate assurance," and "assumption," "assignment" — are all over the sale documents.  *See generally* 11 U.S.C. § 365.

It is true that, as the stalking horse bidder, Boersen Farms was involved in selecting the assets to be conveyed or assigned under the Purchase Agreement, and that Boersen Farms bargained for a mechanism by which it might cause certain assets to be treated as "Excluded Assets" pursuant to Section 2.3.2 of the Purchase Agreement, but this does not amount to an assignment of a debtor's statutory rights under § 365. Indeed, the statute authorizes the "trustee" (or, as here, a debtor-in-possession under § 1107(a)) to assume, reject, and assign executory contracts and unexpired leases, with the court's approval:

> (a) Except as provided in sections 765 and 766 of this title and in subsections (b), (c), and (d) of this section, the *trustee*, subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor.
>
> . . .
>
> (f)(1) Except as provided in subsections (b) and (c) of this section, notwithstanding a provision in an executory contract or unexpired lease of the debtor, or in applicable law, that prohibits, restricts, or conditions the assignment of such contract or lease, the *trustee* may assign such contract or lease under paragraph (2) of this subsection.
>
> (2) The *trustee* may assign an executory contract or unexpired lease of the debtor only if—
>     (A) the *trustee* assumes such contract or lease in accordance with the provisions of this section; and
>     (B) adequate assurance of future performance by the assignee of such contract or lease is provided, whether or not there has been a default in such contract or lease.

11 U.S.C. § 365 (emphasis added). This section authorizes the "trustee" (or debtor-in-possession), subject to the court's approval and subject to appropriate cure and adequate assurance of future performance, to assume and assign contracts and leases; it does not authorize third party purchasers, such as Boersen Farms, to make those decisions. *Cf. Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.*, 530 U.S. 1, 6 (2000)("the statute appears

quite plain in specifying who may use § 506(c) -- [t]he trustee"). Because assumption and assignment in accordance with these sections has important consequences for the estate under § 365(k), Congress naturally vested the authority and discretion to make these decisions in the estate's representative. The court is unwilling to authorize unfettered delegation of this discretion, and never intended to alter the statutory design by conceiving of the transaction in the contrived way that Boersen Farms now advocates after the fact. Moreover, it makes no sense to speak of Boersen Farms's deciding to assign any lease to itself.

In short, the court would not, did not, and does not read the Sale Order and the Purchase Agreement as delegating the estate's authority under § 365 to Boersen Farms. Instead, the Sale Order and the Purchase Agreement transferred the estate's interest in the Todd File Lease to "Boersen Farms, Inc. or its permitted assignee, including Boersen Farms AG, LLC (as the "Purchaser")." Sale Order at p. 1 (preamble). Because the parties to the Purchase Agreement did not exclude the Todd File Lease from the transaction pursuant to Section 2.3.2, Boersen Farms succeeded to the obligations to Mr. File, and Stamp Farms was relieved of those obligations, pursuant to § 365(k).

As noted above, Boersen Farms, Inc. assigned its rights under the Purchase Agreement to Boersen Farms AG, LLC, and Boersen Farms AG, LLC agreed to assume the "Assumed Liabilities" referred to in the Purchase Agreement, including the obligations under the Todd File Lease. *See* Assignment and Assumption Agreement (Recitals A and B) (Def. Opp. Brief, Exh. C). Under the Purchase Agreement, Boersen Farms, Inc. agreed to "assume and perform" the following relevant obligations:

> (i) "all liabilities accruing under the Real Property Leases on and after the Closing Date and/or otherwise required to be performed with respect to the Property on or after the Closing Date; (ii) all liabilities accruing under the Real Property Leases in respect of

> calendar year 2013, whether payable before, on or after the Closing
> Date . . .

*See* Purchase Agreement at § 2.2.  In general, contractual rights may be assigned and contractual duties may be delegated, as § 365 expressly and implicitly recognizes.[7]  Here, the Purchase Agreement expressly contemplated both, but it also included the twin conditions that Boersen Farms, Inc. remain obligated to perform under the Purchase Agreement notwithstanding the assignment, and that the assignee (Boersen Farms AG, LLC) expressly assume all of the "Purchaser's" obligations.  *See* Purchase Agreement at § 11.13.  The court finds that both Boersen Farms entities became obligated to perform under the Todd File Lease, and both may be required to pay damages if Mr. File proves his breach of lease claims in a court of competent jurisdiction.

3.      Mr. File's Breach of Lease Claims

For the reasons set forth above in the discussion of jurisdiction, the court does not reach the question of whether Mr. File has a claim against either of the Boersen Farms entities (or both) for breaching the lease, or whether Boersen Farms has any defenses (other than the defenses rejected in this Opinion).  In other words, nothing in this Opinion should be read as resolving the breach of lease issues, which will remain to be decided by another court if Mr. File elects to pursue such relief.  Today, given the limits on its authority, the court simply declares that Boersen Farms became obligated to Mr. File under the Todd File Lease (as defined herein) as a result of the Bulk Sale.

---

[7] By conditioning a debtor's assignment upon "adequate assurance of future performance by the assignee of such contract or lease" and simultaneously relieving the estate of any obligation upon assignment, the statute clearly contemplates a delegation of duties by the debtor to the purchaser, in this case Boersen Farms.  11 U.S.C. § 365(f)(1)(B) and (k).

CONCLUSION

The court finds that it has jurisdiction to interpret its Sale Order and sale-related documents, that Stamp Farms assumed and assigned the Todd File Lease to Boersen Farms, and Boersen Farms became obligated to Mr. File thereby. Boersen Farms, Inc. and Boersen Farms AG, LLC shall each be treated as a party to that lease, but the court lacks jurisdiction under 28 U.S.C. § 1334(b) to enforce the lease in any contest between Mr. File and Boersen Farms because the outcome of that controversy will not affect the estate or Stamp Farms.

The court, therefore, will simply direct the Clerk to enter judgment in accordance with this Opinion, and will cancel the trial that is scheduled to take place on March 20, 2014.

NOW, THEREFORE, the Plaintiff's summary judgment motion (DN 28) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the Defendants' summary judgment motion (DN 15) is GRANTED IN PART AND DENIED IN PART.

IT IS FURTHER ORDERED that the trial scheduled to take place on March 20, 2014 at the United States Court House in Kalamazoo, Michigan is CANCELLED.

IT IS FURTHER ORDERED that the Clerk shall enter a judgment on a separate document (1) declaring that Boersen Farms, Inc. and Boersen Farms AG, LLC became obligated to assume and perform (i) all liabilities accruing under the Todd File Lease on and after February 22, 2013; and (ii) all liabilities accruing under the Todd File Lease in respect of calendar year 2013, whether payable before, on or after February 22, 2013, under the Todd File Lease; and (2) dismissing the remaining claims in this adversary proceeding for want of jurisdiction.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Opinion and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Michael C. Bingen, Esq., Ronald J. Vander Veen, Esq., and the United States Trustee.


END OF ORDER


**IT IS SO ORDERED.**

**Dated March 13, 2014**



Scott W. Dales
United States Bankruptcy Judge